```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
BACHIR NASRANY,                                                    :
                                                                   :
                                  Plaintiff,                       :
                                                                   :     24-cv-7163 (LJL)
                       -v-                                         :
                                                                   :     OPINION AND ORDER
THE GENERAL CONSULATE OF KUWAIT IN NEW                             :
YORK CITY AND HADI ALSUBAEI,                                       :
                                                                   :
                                  Defendants.                      :
                                                                   X
-------------------------------------------------------------------
```

LEWIS J. LIMAN, United States District Judge:

Defendants, the General Consulate of Kuwait in New York City (the "Consulate") and Vice Consul Hadi Alsubaei ("Alsubaei" and with the Consulate, "Defendants"), move, pursuant to Federal Rule of Civil Procedure 12(b)(5), for an order dismissing the complaint of Plaintiff Bachir Nasrany ("Plaintiff") for insufficient service of process. Dkt. No. 8. Plaintiff moves to remand the case to New York State Supreme Court. Dkt. No. 24.

For the following reasons, Plaintiff's motion to remand is denied. Defendants' motion to dismiss the complaint for insufficient process is granted, and the complaint is dismissed without prejudice. Plaintiff shall have until April 7, 2025, to effect service of process.

## BACKGROUND

The Court construes the allegations of a pro se Plaintiff liberally to reflect the strongest claims they suggest. *See, e.g., McLeod v. Jewish Guild For The Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017).

Plaintiff was employed by the Consulate beginning in 2020. Dkt. No. 1-1 ¶ 3.[1] He was supervised by Vice Consul Alsubaei. *Id.* Shortly after he began his employment, he began experiencing severe and persistent harassment and abuse from Alsubaei. *Id.* Alsubaei subjected Plaintiff to threats and dehumanizing treatment, disregarding Plaintiff's autonomy and dignity. *Id.* ¶ 4. The conduct included a pervasive pattern of harassment, including frequent yelling, insults, unwarranted pressure, and demeaning treatment, both privately and in front of Plaintiff's colleagues. *Id.* Plaintiff reported the treatment to human resources and the General Counsel of the Consulate, but no effective action was taken to address the situation. *Id.* Finally, an incident of extreme insult on August 8, 2023, prompted Plaintiff to resign on August 15, 2023. *Id.* ¶ 5. However, the Consulate neither acknowledged nor accepted Plaintiff's resignation, perpetuating an intolerable work environment. *Id.* Despite his resignation, Plaintiff faced severe sexual harassment on November 9, 2023, and was asked to continue working without redress for the harassment. *Id.* ¶ 7. Additionally, the Consulate has refused to pay Plaintiff's rightful wages. *Id.* ¶ 9.

On October 24, 2023, Plaintiff filed a claim with the New York State Department of Human Rights ("NYSDHR") and with the Equal Employment Opportunity Commission ("EEOC") regarding the harassment and abuse endured at the Consulate. *Id.* ¶ 6.

## PROCEDURAL HISTORY

Plaintiff initiated this action by complaint filed in New York State Supreme Court, New York County on July 10, 2024. Dkt. No. 1 ¶ 2; Dkt. No. 2 ¶ 3. On or about July 15, 2024, Plaintiff filed an Amended Complaint against Defendants in state court. Dkt. No. 1 ¶ 3; Dkt. No. 2 ¶ 4.

---

[1] For the purposes of the present motion, the Court accepts the Plaintiff's version of events as true.

On or about August 12, 2024, Plaintiff moved for an order directing an alternate manner of service of the Summons and Verified Complaint, citing the impracticability of personal service on Defendants. Dkt. No. 1 ¶ 4; Dkt. No. 2 ¶ 5. The New York State Supreme Court granted Plaintiff's request and ordered that the Summons and Verified Complaint be served upon Defendants by (a) overnight mail, (b) certified mail with return receipt requested, and (c) ordinary mail, to the Consulate's address at 321 East 44th Street, 9th Floor, New York, New York 10017. Dkt. No. 1 ¶ 5; Dkt. No. 1-1 at ECF p.2.

Defendants received the Summons and Amended Complaint by a U.S. Postal Service Priority Mail Express delivery at the Consulate's address on or about August 22, 2024. Dkt. No. 1 ¶ 6. Defendants received the Summons and Amended Complaint by certified mail delivery on or about August 23, 2024, at the Consulate's address and by ordinary mail delivery at the same address on or about August 26, 2024. *Id.* Alsubaei received the Summons and Amended Complaint by regular mail delivery on or about August 23, 2024, also at the Consulate's address. *Id.* ¶ 6.

Defendants removed the action to this Court by Notice of Removal on September 20, 2024, invoking 28 U.S.C. §§ 1351 and 1441(d). Dkt. No. 1. On September 27, 2024, Defendants filed this motion to dismiss the complaint for failure to effect sufficient process. Dkt. No. 8. Defendants also filed a memorandum of law in support of their motion. Dkt. No. 9. Plaintiff filed a memorandum of law in opposition to that motion on October 23, 2024. Dkt. No. 20. Defendants filed a reply memorandum of law in further support of the motion on November 6, 2024. Dkt. No. 30.

Plaintiff filed a motion to remand on October 8, 2024. Dkt. No. 13. He filed further papers in support of that motion on October 10, 2024, Dkt. No. 17, and on October 25, 2024,

Dkt. No. 24.  Defendants filed a memorandum of law in opposition to that motion on November 7, 2024.  Dkt. No. 31.  Plaintiff filed a reply memorandum of law on November 14, 2024.  Dkt. No. 33.

## DISCUSSION

Beginning with Plaintiff's motion to remand, the Court determines that the case was properly removed. The Court then turns to the motion to dismiss for insufficient service of process.  The common flaw across Plaintiff's arguments is that Plaintiff conflates the standards for foreign sovereign immunity with the requirements for removal and for service of process.  Plaintiff has not effected sufficient service of process.  Accordingly, his action must be dismissed without prejudice.

**I.      Plaintiff's Motion to Remand is Denied**

Defendants removed this action from state court based on 28 U.S.C. §§ 1351 and 1441(d).  Dkt. No. 1.  Plaintiff argues that the case should be remanded to state court because (i) Defendants fall within the exemption from foreign sovereign immunity for commercial activity, (ii) the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227 ("VCDR") does not shield diplomats from civil liability for their commercial activities, (iii) the case raises claims under New York State law, (iv) Defendants have engaged in forum shopping, and (v) the EEOC right to sue letter authorizes him to sue in state court. Dkt. No. 13 at 1–3; Dkt. No. 17 at 1–3.  Plaintiff also argues that the statutory basis that Defendants invoke for removal, 28 U.S.C. § 1441(d), does not apply when a plaintiff asserts substantive claims "rooted in state law," that another statute upon which Defendants rely, 28 U.S.C. § 1351, does not apply to claims regarding commercial activities, and that a different statute, 28 U.S.C. § 1605(a)(2), prevents Defendants from removing actions related to their commercial activities.  Dkt. No. 24 at ECF p. 3.

The case was properly removed and Plaintiff's motion is without merit. The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1391(f), 1441(d), 1602–1611, upon which Defendants' removal petition rests, reflects the congressional intent "to channel cases against foreign sovereigns away from the state courts and into the federal courts, thereby reducing the potential for a multiplicity of conflicting results among the courts of the 50 states." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 497 (1983). The FSIA effects that objective in two principal ways. First, any claim permitted under the FSIA "may be brought from the outset in federal court." *Id.* at 489 (citing 28 U.S.C. § 1330(a)). Second, and as relevant here, the FSIA permits an action commenced against a foreign state in state court to be removed to federal court. In particular 28 U.S.C. § 1441(d), adopted as part of the FSIA, provides in pertinent part:

> Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal, the action shall be tried by the court without a jury.

28 U.S.C. § 1441(d). "'In view of the potential sensitivity of actions against foreign states and the importance of developing a uniform body of law in this area,' H.R. Rep. No. 94-1487, at 32, the Act guarantees foreign states the right to remove any civil action from state court to a federal court." *Verlinden*, 461 U.S. at 489 (citing 28 U.S.C. § 1441(d)); *see also id.* at 484 ("allowing *all* actions against foreign sovereigns . . . to be brought in federal court was necessary to effectuate 'the Congressional purpose of concentrating litigation against sovereign states in the federal courts in order to aid the development of a uniform body of federal law governing assertions of sovereign immunity'") (quoting *Verlinden*, 488 F. Supp. 1284, 1292 (S.D.N.Y. 1980) (Weinfeld, J.)).

A consulate is a "foreign state" under the FSIA, which defines "foreign state" to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). *See Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1517 (9th Cir. 1987) (holding that a Mexican consulate is a foreign state under 28 U.S.C. § 1603); *Daise v. Brit. Consulate Gen. Miami Crown Prosecution Servs. for Foreign Commonwealth Off.*, 2022 WL 598038, at *2 (M.D. Fla. Jan. 21, 2022), *report and recommendation adopted*, 2022 WL 596832 (M.D. Fla. Feb. 28, 2022); *Gray v. Permanent Mission of People's Republic of Congo to United Nations*, 443 F. Supp. 816, 819 (S.D.N.Y.), *aff'd*, 580 F.2d 1044 (2d Cir. 1978) (Congo Mission is a foreign state within the meaning of 28 U.S.C.§ 1603(a)).

This case fits comfortably within the removal provision of the FSIA. The removal statute applies to "[a]ny civil action brought in a State court against a foreign state." 28 U.S.C. § 1441(d). The word "any" is expansive. *See, e.g.*, *Rosa v. Mandarich L. Grp., LLP*, 2024 WL 871209, at *9 ("[any] has an expansive meaning; on its own, it does not admit of exceptions") (citing *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). It easily embraces an action based on state human rights law. *See generally Kato v. Ishihara*, 360 F.3d 106 (applying FSIA in an employment rights claim based, in part, on New York state and local human rights laws).

The Consulate is a foreign state under the language of the statute. *Berdakin v. Consulado de la Republica de El Salvador*, 912 F. Supp. 458, 461 (C.D. Cal. 1995); *Bardales v. Consulate General*, 490 F. Supp. 3d 696, 701 (S.D.N.Y. 2020) ("There is no dispute here that the Consulate of Peru is a foreign state within the meaning of the FSIA.") (internal citation omitted); *see also Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 33 (D.D.C. 2014) ("[D.C.] [D]istrict court opinions . . . have found uniformly that embassies are 'integral part[s] of a foreign state's political structure' and therefore appropriately considered 'foreign states' for FSIA purposes")

6

(internal citation omitted) (quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994)). Moreover, once the Consulate invoked its rights under Section 1441(d) to remove this civil action, the notice of removal carried with it the removal of the action as against Vice Consul Alsubaei. *See, e.g.*, *Teledyne, Inc. v. Knoe Corp.*, 892 F.2d 1404, 1409 (9th Cir. 1989) ("At the very least, subsection 1441(d) expresses an intention to give sovereign foreign defendants an absolute right to a federal forum coupled with an unusually strong preference for the consolidation of claims."); *USX Corp. v. Adriatics Ins. Co.*, 345 F.3d 190, 207 (3d Cir. 2003) ("a foreign state defendant . . . may remove the entire case to a district court, even when it is merely one among almost 50 otherwise non-foreign state defendants"); *see also* H.R. Rep. No. 94-1487, at 32 (1976) ("[the FSIA] permits the removal of any such action at the discretion of the foreign state, even if there are multiple defendants").

Plaintiff incorrectly argues that Section 1441(d) does not apply because the Consulate is not immune under the FSIA and because he asserts claims under state law. Plaintiff conflates the substantive provisions of the FSIA, which address when a foreign state enjoys immunity, with the procedural provisions of that statute, which address the forum in which the question of immunity is to be addressed. The FSIA creates a uniform set of standards of sovereign immunity that "control in 'the courts of the United States and of the States.'" *Verlinden*, 461 U.S. at 489 (quoting 28 U.S.C. § 1604). As the Supreme Court has repeatedly held, the FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 30 (2015) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). It applies alike to claims based on state law as to those based on federal law. *USX Corp.*, 345 F.3d at 207 (holding that even for state claims brought in state court "[the FSIA] provides for suit in federal court . . . with significant

procedural consequences, some of which a plaintiff likely will not welcome"); *see also id.* at n.15 (analogizing removal of state claims to federal court under FSIA to removal under diversity of citizenship); *Permanent Mission of India to the U.N. v. City of New York*, 551 U.S. 193, 196 (2007) (noting Section 1441(d) "provides for removal" in a municipal tax lien case originally brought in state court).

The procedural sections of the FSIA give the foreign state the right to have the content of sovereign immunity standards determined in a federal court, whose judges are appointed by federal authorities and owe loyalty only to the federal Constitution and federal law. *See* Federalist Papers 81. *See also Dole Food Co. v. Patrickson*, 538 U.S. 468, 484 (2003) (Breyer, J., dissenting) (the FSIA seeks to "provide a foreign-state defendant in a legal action the right to have its claim of sovereign immunity bar decided by . . . the federal courts"); H.R. Rep. 94-1487, at 13 ("broad jurisdiction in the Federal courts [under the FSIA] should be conducive to uniformity of decision, which is desirable since a disparate treatment of cases involving foreign governments may have adverse foreign relations consequences"). The fact that Plaintiff asserts claims based on state law does not mean that he is entitled to have a state court determine the question of immunity under the FSIA. Defendants have a right to have a federal court determine whether Defendants are immune under the FSIA; Plaintiff's claim that Defendants are not immune does not deprive Defendants of the right to have the federal court make that decision.[2]

For the same reasons, Plaintiff's argument that Defendants are engaged in forum shopping is without merit. The FSIA expressly contemplates that a foreign state sued in state court will "shop" to determine whether it wishes to have a state court or a federal court

---

[2] The Court need not now address the question of whether Defendants are immune under the FSIA.

determine its immunity. *Verlinden*, 461 U.S. at 486 ("'[in] view of . . . developing a uniform body of law in this area' . . . [the FSIA] guarantees foreign states the right to remove any civil action from a state court to a federal court") (internal citation omitted) (quoting H.R. Rep. No. 94-1487, at 32). Defendants simply availed themselves of that opportunity.[3]

Plaintiff makes two additional arguments: (1) the VCDR does not shield diplomats from civil liability for their commercial activities and (2) the EEOC right to sue letter authorizes him to sue in state court. Dkt. No. 13 at 1–3; Dkt. No. 17 at 1–3; Dkt. No. 24 at 6, 13; Dkt. No. 33 at 7. Those arguments do not help Plaintiff. Defendants rest their right to removal on the FSIA and not on immunity under the VCDR. Dkt. No. 30 at 2–3; Dkt. No. 31 at 2. Whether or not the Defendants are immune under the VCDR, the Consulate is entitled to have this case adjudicated in federal court under the FSIA. On May 21, 2024, the NYSDHR issued a Determination and Order of Dismissal for Lack of Jurisdiction, Dkt. No. 13 at ECF p. 47, and on August 22, 2024, the EEOC issued a Dismissal and Notice of Rights and right to sue letter, *id*. at ECF p. 50. The NYSDHR determined that it did not have jurisdiction because the Consulate is an agent of a foreign government but informed Plaintiff of his right to appeal that determination to New York State Supreme Court. *Id*. at ECF p. 47. The EEOC right to sue letter informed Plaintiff that he could file his lawsuit against the Consulate in federal or in state court. *Id*. at ECF p. 52. Plaintiff exercised the rights referenced in those communications. Defendants do not dispute Plaintiff's right to sue the Consulate in state court in the first place.[4] But neither notice deprived the Consulate of its federal statutory right to remove Plaintiff's action once it was filed in state court.

---

[3] Plaintiff has no basis for his concern that the removal of this case will "prolong litigation." Dkt. No. 13 at ECF p. 2. The Federal Rules of Civil Procedure are designed to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.
[4] Defendants do argue that the state court did not have jurisdiction over Alsubaei.

9

## II. Defendants' Motion to Dismiss for Insufficient Service of Process is Granted

The Court now turns to Defendants' motion to dismiss the complaint for failure to effect sufficient service of process.

Defendants argue that the case must be dismissed for insufficient service of process on the grounds that service upon consular premises is invalid under the VCDR and the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77 ("VCCR"), the United States being party to both. Dkt. No. 9 at 1. Defendants also argue that the service upon Alsubaei was invalid because the state court never had jurisdiction over him; Alsubaei is a Vice Consul and, under federal law, exclusive jurisdiction over civil actions against Vice Consuls of foreign states lies with the federal courts. Dkt. No. 9 at 1; *see* 28 U.S.C. § 1351.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). When the sufficiency of service of process is challenged under Federal Rule of Civil Procedure 12(b)(5), "the plaintiff bears the burden of proving adequate service." *Esposito v. TipRanks, Ltd.*, 2024 WL 68528, at *2 (S.D.N.Y. Jan. 4, 2024) (quoting *Militinska-Lake v. Kirnon*, 2023 WL 7648511, at *1 (2d Cir. Nov. 15, 2023) (summary order)); *see* 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1083 (4th ed. 2016) ("[T]he party on whose behalf service of process is made has the burden of establishing its validity.").

### A. Service on the Consulate was Defective Under the FSIA

Section 1608 of the FSIA provides the exclusive means by which a "foreign state or political subdivision of a foreign state" or "an agency or instrumentality of a foreign state" may be served in "the courts of the United States or of the States." 28 U.S.C. § 1608. "Foreign governments and their political subdivisions must be served in strict compliance with the

10

provisions of the FSIA; anything less will not suffice under the law." *Daise v. Brit. Consulate Gen. Miami Crown Prosecution Servs. for Foreign Commonwealth Off.*, 2022 WL 598038, at *3 (M.D. Fla. Jan. 21, 2022), *report and recommendation adopted*, 2022 WL 596832 (M.D. Fla. Feb. 28, 2022). By its terms, the FSIA is applicable in both federal and state court. *See Seramur v. Saudi Arabian Airlines*, 934 F. Supp. 48, 51–52 (E.D.N.Y. 1996).

"Service under the FSIA on a *foreign state* must be made by any of four methods." *Simons v. Lycee Francais De New York*, 2003 WL 22295360, at *1 (S.D.N.Y. Oct. 7, 2003) (emphasis added). Section 1608(a) provides that service is to be made as follows:

> (1) by delivery . . . in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery . . . in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
>
> (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State . . .

28 U.S.C. § 1608(a).

"Service under the FSIA on *agencies and instrumentalities* of foreign states is governed by 28 U.S.C. § 1608(b), which provides three alternate methods." *Simons*, 2003 WL 22295360, at *2 (emphasis added). Section 1608(b) provides as follows:

> Service in the courts of the United States and of the States shall be made upon *an agency or instrumentality of a foreign state:*

11

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—
>
>> (A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or
>>
>> (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or
>>
>> (C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608(b) (emphasis added)

The General Consulate of Kuwait in New York City is considered a *foreign state* and must be served in accordance with Section 1608(a). *See, e.g.*, *Lewis & Kennedy, Inc. v. Permanent Mission of Republic of Bots. to the UN*, 2005 WL 1621342, at *3 (S.D.N.Y. Jul. 12, 2005) (stating that consulates are 'foreign states' under the FSIA and must therefore be served in accordance with Section 1608(a)) (citing *Gerritsen*, 819 F.2d at 1517); *see also Gray v. Permanent Mission of People's Republic of Congo to United Nations*, 443 F. Supp. 816, 820 (S.D.N.Y. Jan. 18, 1978).

Plaintiff's service upon the Consulate was defective under the FSIA. Plaintiff has not identified any "special arrangement" or international convention that would permit service upon the Consulate by mail. *See, e.g.*, 28 U.S.C. § 1608(a)(1)–(2). To the contrary, as discussed

12

below, international convention prohibits service upon the Consulate by mail to its offices. In the absence of proper service by those means, Plaintiff was required to make service under Section 1608(a)(3). *See Republic of Sudan v. Harrison*, 587 U.S. 1, 11 (2019) (holding that service under § 1608(a)(3) must be sent directly to the customary office of the foreign state's foreign minister, "not a farflung outpost" like an embassy).

> B.  Service on the Vice Consul was Defective Under 28 U.S.C. § 1351 and the VCCR

The provisions of the FSIA generally do not apply to personnel of a consulate, such as a vice consul, sued in their individual capacity. *See, e.g.*, *Carpenter v. Republic of Chile*, 610 F.3d 776, 780 (2d Cir. 2010) ("[the] FSIA no longer protects government officials") (citing *Samantar v. Yousuf*, 560 U.S. 305 (2010)); *but see Samantar*, 560 U.S. at 325 ("[S]ome actions against an official in his official capacity should be treated as actions against the foreign state itself, as the state is the real party at interest."). When individual officials of a foreign sovereign are sued for their own conduct—rather than as proxies for the conduct of their foreign government—those individuals must be served not according to the FSIA but instead in a manner consistent with the procedural rules of that jurisdiction and with applicable international treaties. *Cf. Williams v. Fed. Gov't of Nigeria*, 2024 WL 3759649, at *19 (S.D.N.Y. Aug. 12, 2024) (permitting the Attorney General of Nigeria to argue inadequate service under the FSIA as an individual defendant when the lawsuit was in fact against the Nigerian Government itself). Though other consular employees may be sued in their individual capacities in state court, federal courts have had exclusive jurisdiction over actions against foreign consuls or vice consuls since 1789. *See* 28 U.S.C. § 1351 (district courts have exclusive jurisdiction of all civil actions against consuls or vice consuls of foreign states); *Bors v. Preston*, 111 U.S. 252, 256 (1884); *Foxgord v. Hischemoeller*, 820 F.2d 1030, 1034–36 (9th Cir. 1987) (summarizing the legislative and judicial

13

history of Section 1351 to that point). When anyone, including a vice consul, is sued in federal court in their individual capacity, Rule 4 of the Federal Rules of Civil Procedure allows that individual to be served using the state law procedures available in that judicial district, Fed R. Civ. P. 4(e)(1), or using the federal procedures, Fed R. Civ. P. 4(e)(2), so long as the chosen mechanism does not violate international treaty.

Service of process upon Alsubaei was insufficient for two separate reasons. First, the New York state court never had jurisdiction over the vice consul in the first place. *See* 28 U.S.C. § 1351. It follows that service authorized by a court that never had jurisdiction also is ineffective. *See Scheltz-Walther v. Consulate Gen. of Kuwait in Los Angeles*, 2022 WL 21714006, at *2 (C.D. Cal. Aug. 25, 2022) ("valid service of process did not occur in the state proceedings in this case because the Los Angeles Superior Court did not have jurisdiction [over consuls of foreign states]") (citing 28 U.S.C. § 1351).

Second, and independently, while service of process upon Alsubaei by mailing the summons and complaint to him at the Consulate may have been compatible with Federal Rule of Civil Procedure 4(e), it violated international treaty. *See Sikhs for Just. v. Nath*, 850 F. Supp. 2d 435, 441 (S.D.N.Y. 2012). Article 31 of the VCCR provides that consular premises are deemed to be "inviolable," and "[t]he authorities of the receiving State shall not enter that part of the consular premises which is used exclusively for the purpose of the work of the consular post." VCCR.[5] Under the VCCR, it would be improper for a United States marshal to enter the Kuwait

---

[5] Both parties also reference the VCDR. However, the only convention relevant to this case is the VCCR, as the Consulate qualifies as a "consular post" rather than a "diplomatic mission." *See* VCCR, Art. 1(a), 21 U.S.T. 77 ("'consular post' means any consulate-general, consulate, vice-consulate, or consular agency"); *cf.* VCCD, 23 U.S.T. 3227 (referring exclusively to "diplomatic missions" rather than consular posts); *see also Broidy Cap. Mgmt. LLC v. Muzin*, 2023 WL 6795809, at *3 n.4 (D.D.C. Oct. 13, 2023) (noting when a case concerns an "embassy rather than a consulate" the "VCDR rather than VCCR supplies the applicable legal standard")

Consulate to hand Alsubaei the summons and complaint. *Cf.* Fed. R. Civ. P. 4 advisory committee note to 1980 amendment (noting that prior to 1980, the Federal Rules of Civil Procedure directed that service be made by the United States marshal or deputy marshal or person specifically appointed by the court). There is no reason the same prohibition would not apply to service made by a United States postal officer exercising a power entrusted to her by federal and state law. The precincts of the Kuwait Consulate are inviolable, but the person of the Vice Consul is not inviolable, at least from service of process.[6] The effect of the VCCR is to put some, but not all, methods of serving Alsubaei out of bounds.

Plaintiff has several other modes of service available under Rule 4 of the Federal Rules of Civil Procedure, which in turn authorizes service under New York state law. Fed R. Civ. P. 4(e)(1). While Plaintiff may not serve Alsubaei by mail delivered to his "place of business," the Kuwait Consulate, under the VCCR, *see Sikhs for Just.*, 850 F. Supp. 2d at 441 (citing Restatement (Third) of Foreign Relations § 466, Rpr. N.2); *Sweezy v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 122 A.D.3d 489, 490 (1st Dep. 2014) (holding a lower court's order to

---

(internal citation omitted). "Consular post" refers to non-embassy consulates located in major financial or cultural centers throughout a foreign country. *See, e.g.*, *Park v. Shin*, 313 F.3d 1138, 1141 (9th Cir. 2002) (applying the VCCR to a dispute involving the Deputy Consul General of South Korea's Consulate General in San Francisco). The VCDR's description of the inviolability of a diplomatic mission can fairly be described as "total," but the VCCR includes three qualifications to consular inviolability: (1) inviolability is only extended to "that part of the consular premises which is used exclusively for the purpose of the work of the consular post," (2) consent to consular premises may be "assumed" by host state authorities in an emergency "requiring prompt protective action," and (3) the host state may expropriate consular property under certain circumstances. VCCR, Arts. 31(2), 31(4), 21 U.S.T. 77. None of these exceptions apply here, so the difference between the VCCR and VCDR is immaterial for the purposes of this motion.

[6] Vice Consul Alsubaei's personal inviolability under the VCCR protects him only from detention, arrest, or "any other form of restriction on [his] personal freedom." VCCR, Art. 41, 21 U.S.T. 77. Facially, none of these provisions prevent service of process on his person or at his residence, so long as it does not occur on inviolable consular property. *Id.* at Art. 31(1).

serve a petition on an Embassy violated the VCDR and VCCR) (citing *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 748), Plaintiff may effect service by delivering the summons and complaint to Alsubaei himself or to a "person of suitable age and discretion" at Alsubaei's "dwelling place or usual place of abode" as permitted under New York state and federal law, C.P.L.R. § 308(2); Fed. R. Civ. P. 4(e)(2)(B), or by the other methods permitted by federal or state law, *see* Fed. R. Civ. P. 4(e); C.P.L.R. § 308.[7]

### C.     Plaintiff's Arguments to the Contrary Are Without Merit

Plaintiff's arguments that service was effective as to both the Consulate and Alsubaei are without merit.

Plaintiff first argues that service was proper because New York law permits alternative service and he complied with the court-authorized alternative service procedures. Dkt. No. 20 at 1–2. However, the New York state court's ex parte decision to permit Defendants to be served by means of alternative service does not deprive Defendants of their right to have this Court determine the sufficiency of that service through a motion under Rule 12(b)(5) now that the action has been removed. *See Cargill Fin. Servs. Int'l, Inc. v. Barshchovskiy*, 2024 WL 4240998, at *3 n.1 (S.D.N.Y. Sept. 19, 2024). "Had this Court issued the Order of Service ex parte as [the New York State Court] did, Defendant would have been free to challenge the sufficiency of alternative service through a motion under Rule 12(b)(5) without regard to principles of law of

---

[7] In addition to the procedure spelled out above under C.P.L.R. § 308(2), Plaintiff may effect personal delivery to Alsubaei by engaging a process server to hand him the documents outside of the confines of the Consulate property, *see* C.P.L.R. § 308(1); Fed. R. Civ. P. 4(e)(2)(a), or, if he cannot effect service after suitable due diligence under § 308(1) or (2), he may use the "nail and mail" method under § 308(4) which allows the complaint and summons to be affixed to the door of the residence while also mailing it to the same address. If service is impracticable under § 308(1), (2), and (4), New York and federal law permits Plaintiff to make a motion to this Court for alternate service under § 308(5). The Court does not at this time determine whether either of the latter two forms of service would be appropriate.

16

the case. The doctrine of law of the case has no greater application where, as here, the prior ex parte order was issued by a state court justice prior to removal." *Id.* (internal citations omitted).

Plaintiff further argues that New York courts have personal jurisdiction over the Defendants under New York's long-arm statute. Dkt. No. 20 at 2. That argument, however, is without merit, because to bring a defendant before a court, the court must have personal jurisdiction and the plaintiff must follow the formal procedures for service of process. *Omni Cap. Int'l*, 484 U.S. at 104; *Lederman v. Benepe*, 2014 WL 1318356, at *6 (S.D.N.Y, Mar. 28, 2014) (finding that the court lacked personal jurisdiction over defendants "[b]ecause Plaintiff did not properly serve the summons and original complaint" on them). That Defendants are subject to personal jurisdiction in this Court does not mean that they have been properly served.

Plaintiff next argues that Defendants' Rule 12(b)(5) motion is a "delay" tactic. Dkt. No 20 at 3. Defendants are entitled to be properly served. The mechanisms for service of process under the FSIA are certainly less efficient than simply mailing a copy of the summons and complaint to the Consulate. But the implicit choice that Congress made in adopting the FSIA was that a plaintiff seeking to sue a foreign state would not be able to follow the procedures applicable to service upon any civilian in the United States but would have to follow the methods listed in the FSIA.

Finally, Plaintiff argues that the substantive provisions of the FSIA do not apply and Defendants therefore do not enjoy sovereign immunity. Dkt No. 20 at 3. As previously discussed, however, the procedural provisions of the FSIA are distinct from its substantive provisions. Before the Court can determine whether Defendants are immune, Plaintiff must properly serve Defendants.

**III.    Time for Service**

Plaintiff's complaint must be dismissed without prejudice for insufficient service of process.  However, "there is no statutory deadline for service under the Foreign Sovereign Immunities Act, unlike the presumptive 120-day time limit in Rule 4(m) of the Federal Rules of Civil Procedure." *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 29 (D.C. Cir. 2015); *see also Lewis & Kennedy, Inc.*, 2005 WL 1621342, at *5.

Plaintiff is pro se.  He has shown diligence in pursuing this action.  Defendants are on notice of the action.  Plaintiff will have until April 7, 2025, to effect service of process.  If process is not served by that date and there is no request from Plaintiff for an extension of time to serve process, the case will be dismissed with prejudice.

## CONCLUSION

Plaintiff's motion to remand is DENIED.  Defendants' motion to dismiss the complaint for insufficient service of process is GRANTED and the complaint is DISMISSED WITHOUT PREJUDICE.  Plaintiff shall have until April 7, 2025, to effect service of process.

The Clerk of Court is respectfully directed to close Dkt. Nos. 8, 13, 17, and 24.

SO ORDERED.

Dated: December 6, 2024
         New York, New York

_____
LEWIS J. LIMAN
United States District Judge